FILED

2015 JAN 27 AM 11: 16

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CHINA NATIONAL BUILDING MATERIAL
INVESTMENT CO., LTD.,
                    **Plaintiff,**

-vs-                                                        **Case No. A-14-CA-701-SS**

BNK INTERNATIONAL, LLC; JEFFREY J.
CHANG,
                    **Defendants.**

_____

### O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Jeffrey Chang's Motion to Dismiss [#9], Defendant BNK International, LLC (BNK)'s Motion to Dismiss [#10], Plaintiff China National Building Material Investment Co., Ltd. (CNBMI)'s Response to Defendants' Motions to Dismiss [#13], Defendant Chang's Reply [#15], and Defendant BNK's Reply [#14]. Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders DENYING the motions to dismiss.

### Background[1]

This action, brought pursuant to diversity jurisdiction, involves Plaintiff CNBMI, a Chinese entity, suing Defendants Chang and BNK, located in Texas, based on a business arrangement gone wrong. Compl. [#1] ¶¶ 1, 3–5. The procedural history of this case is long and winding. The parties' relationship began on May 8, 2004, when CNBMI entered into an Agency Agreement with BNK and

---

[1] The following recounting of the nature of this case derives from the Complaint [#1] as the facts alleged therein are taken as true for present purposes. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

Chang, who at all relevant times was and is BNK's sole member, director, and president. *Id.* ¶ 6–7. Under the Agency Agreement, BNK and Chang were authorized to identify, negotiate, and secure customers in the U.S. to purchase from CNBMI hardwood floor products in exchange for payment of certain commissions. *Id.* ¶ 7.

From 2004 through 2008, BNK and Chang procured sales of CNBMI's materials to Lumber Liquidators, Inc. *Id.* ¶ 9. CNBMI shipped those materials, Lumber Liquidators received them, and Lumber Liquidators paid BNK. *Id.* BNK and Chang reported to CNBMI sales totaling $21,343,145.01, and BNK and Chang paid CNBMI $18,243,072.58 on those sales. *Id.* ¶ 10. The Agency Agreement, however, provided for a larger portion of the $21,343,145.01 in reported sales to be paid to CNBMI, and CNBMI initiated an arbitration proceeding against BNK under the terms of the Agency Agreement. *Id.* ¶ 11. CNBMI won an award of $3,141,835.32. *Id.* ¶ 12. On June 25, 2009, CNBMI filed an Application and Motion to Confirm a Foreign Arbitration Award (Motion to Confirm) against BNK in this Court, and on December 3, 2009, the Court granted CNBMI's Motion to Confirm, rendering a judgment in favor of CNBMI (the Judgment). *Id.* ¶¶ 13–15; *see also China Nat'l Bldg. Material Inv. Co., Ltd. v. BNK Int'l LLC*, No. A-09-CA-488-SS, 2009 WL 4730578, at *1, 8 (W.D. Tex. Dec. 4, 2009). BNK filed a Notice of Appeal on December 31, 2009, and the Fifth Circuit Court of Appeals dismissed the appeal on May 5, 2010. Compl. [#1] ¶ 16.

CNBMI proceeded to serve Post-Judgment Requests for Production of Documents (CNBMI's Requests) on April 14, 2010, seeking information for purposes of collecting on the Judgment, including BNK's bank records and statements of financial affairs. *Id.* ¶ 18–19. On May 17, 2010, BNK served its responses, and the only documents produced were: (1) a Convertible Promissory Note and Line of Credit from an entity named Crossroads Enterprise, Inc., and (2) a Royalty

Agreement. *Id.* ¶ 20–21. BNK did not produce any of its bank or financial records in its initial responses to CNBMI's Requests. *Id.* ¶ 21. On July 16, 2010, CNBMI filed its Motion to Compel and Motion for Sanctions against BNK requesting the Court: (1) overrule BNK's objections to CNBMI's Requests, and (2) order BNK to produce all responsive documents to CNBMI's Requests. *Id.* ¶ 22. Around the same time, in early July 2010, CNBMI issued a subpoena to Produce Documents to Lumber Liquidators seeking sales records, invoices, purchase orders, and payment records related to BNK's products purchased by customers from Lumber Liquidators. *Id.* ¶ 23. "Sometime after July 30, 2010," Lumber Liquidators produced documents responsive to CNBMI's subpoena, including documents identifying BNK's bank account maintained at Bank of America. *Id.* ¶ 24. The records showed the actual amounts paid by Lumber Liquidators to BNK on the sales totaled $29,001,278.71. *Id.* CNBMI was not previously aware of this actual sales figure. *Id.* ¶ 26.

On July 30, 2010, BNK paid CNBMI $1,500,000.00 in partial satisfaction of the Judgment with the remainder outstanding. *Id.* ¶ 27. Based on this payment, which was made before CNBMI supposedly realized the actual sales figure, CNBMI withdrew its Motion to Compel and Motion for Sanctions on August 3, 2010. *Id.* ¶¶ 27–28. On August 6, 2010, based on the information received from Lumber Liquidators, CNBMI issued a Subpoena to Produce Documents to Bank of America Corporation seeking any and all bank records for BNK's accounts. *Id.* ¶ 29. Bank of America produced documents identifying BNK's account wire transfers, bank statements, copies of checks drawn on BNK's accounts, and banking solutions. *Id.* ¶ 30. CNBMI and BNK participated in a settlement meeting on October 11, 2010 to discuss underpayment on the Judgment, but the parties were unable to resolve the matter. *Id.* ¶ 31.

On October 27, 2010, BNK voluntarily entered Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Western District of Texas, Austin Division, and the case was converted to a Chapter 7 bankruptcy on March 31, 2011. *Id.* ¶ 32. On October 18, 2011, CNBMI and the bankruptcy trustee for BNK entered into an Asset Purchase Agreement (APA) whereby CNBMI acquired, among other things, any and all claims BNK might have against Chang. *Id.* ¶ 33. The bankruptcy court approved the APA, and BNK's assets were liquidated. *Id.* ¶ 34.

Based on the foregoing series of events, CNBMI filed its Complaint in this Court on July 30, 2014. In sum, CNBMI alleges Chang undercapitalized BNK, commingled assets, mismanaged the company's business dealings and financial transactions, and defrauded business associates, including CNBMI, to his own personal benefit. *Id.* ¶ 35. While CNBMI obtained a Judgment, it was not aware of the extent of Chang's wrongdoing until it received the documents from Lumber Liquidators and Bank of America. *Id.* ¶ 36. Chang intentionally withheld information from CNBMI revealing his fraud, and as such CNBMI had no way of knowing Chang's misdeeds until obtaining the records from Lumber Liquidators and Bank of America. *Id.* ¶ 37. In its Complaint, CNBMI details its allegations regarding Chang's (1) improper wire transfers from BNK's account (¶¶ 38–51), and (2) improper issuance of BNK checks (¶¶ 52–61).

CNBMI asserts eight "Causes of Action:" (1) "Alter Ego/ Piercing the BNK Veil" based on the claim there is such unity between Chang and BNK that the separateness of BNK has ceased, and as a result, judgment should be rendered against Chang individually, in addition to BNK, for the remaining amount to be satisfied on the underlying Judgment (¶¶ 62–69); (2) "Sham to Perpetrate a Fraud Requiring Piercing of the BNK Veil" based on the related contention Chang used BNK's corporate form for the purpose of perpetrating an actual fraud on CNBMI primarily for his direct

personal benefit, and therefore judgment should be rendered against Chang individually, in addition to BNK, for the remaining amount to be satisfied on the underlying Judgment (¶¶ 70–74); (3) breach of the Agency Agreement based on the allegation Chang and BNK fraudulently understated the amount of sales to Lumber Liquidators and underpaid CNBMI for those sales (¶¶ 75–79); (4) fraud (¶¶ 80–84); (5) breach of fiduciary duty by BNK and Chang owed to CNBMI and arising out of the Agency Agreement and the transactions with Lumber Liquidators (¶¶ 85–88); (6) breach of fiduciary duty by Chang owed to BNK based on the theory CNBMI purchased the rights to BNK's claims through the APA, and as an officer and director of BNK, Chang owed a duty to avoid self-dealing and personal enrichment as well as duties of care and loyalty (¶¶ 89–94); (7) exemplary damages (¶¶ 95–96); and (8) attorneys' fees (¶¶ 97–98).

Based on these allegations, both Chang and BNK have filed a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6). Chang contends CNBMI's claims are barred by the relevant statute of limitations. According to Chang, the asserted claims have a four year limitations period, and CNBMI knew or should have known of its claims prior to July 30, 2010. Alternatively, in the event the Court considers the relief requested more properly subject to summary judgment, Chang requests the Court construe his motion as a summary judgment motion with a limitation on the scope of discovery. BNK incorporates and adopts Chang's argument regarding limitations and additionally argues CNBMI's complaint should be dismissed because: (1) BNK's prior bankruptcy precludes liability, and (2) the claims are barred by res judicata. CNBMI filed a joint response to these two motions, and Chang and BNK filed their replies. The Court now addresses the three grounds for dismissal.

**Analysis**

## I.     Legal Standards—Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   A

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   In deciding a

motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained

within the complaint.  *Leatherman*, 507 U.S. at 164.   However, a court is not bound to accept legal

conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).   Although

all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific

facts, not mere conclusory allegations."  *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th

Cir. 1994).   The plaintiff must plead sufficient facts to state a claim for relief that is facially

plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678.   Although a plaintiff's factual allegations need not establish the defendant is

probably liable, they must establish more than a "sheer possibility" that a defendant has acted

unlawfully.  *Id.* Determining plausibility is a "context-specific task," that must be performed in light

of a court's "judicial experience and common sense."  *Id.* at 679.   In deciding a motion to dismiss,

courts may  consider the complaint, as well as other sources courts ordinarily examine when ruling

on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    Application

### A.    Statute of Limitations

Chang contends CNBMI's claims are barred by a four-year statute of limitations. "While the court can consider a statute of limitations argument on a Rule 12(b)(6) motion to dismiss, such a motion cannot be granted unless the limitations defense is clear on the face of the complaint." *Seghers v. El Bizri*, 513 F. Supp. 2d 694, 707 (N.D. Tex. 2007) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Because statute of limitations is an affirmative defense, the party asserting it has the burden of proof, and "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." *Frame v. City of Arlington*, 657 F.3d 215, 239–40 (5th Cir. 2011); *Hannaway v. Deutsche Bank Nat. Trust Co.*, No. A–10–CV–714–LY, 2011 WL 891669, at *2 (W.D. Tex. Mar. 11, 2011) ("It is the defendant's burden to establish the affirmative defense of limitations, including the accrual date of the plaintiff's claims.").

A complaint should not be dismissed on the basis of the statute of limitations unless "its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame*, 657 F.3d at 240; *id.* ("Because the statute of limitations is an affirmative defense and not a pleading requirement, it is an issue that must be resolved through discovery and summary judgment or trial."); *see also Bowman v. Sanofi-Aventis U.S.*, No. A-09-CA-192-SS, 2009 WL 5083431, at *3 (W.D. Tex. Apr. 16, 2009) ("The statute of limitations is an affirmative defense. It may only serve as a proper ground for dismissal under Rule

12(b)(6), therefore, if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (citation omitted).

The parties do not dispute the applicable statute of limitations for CNBMI's claims is four years. *Compare* Chang's Mot. Dismiss [#9] at 8, *with* Resp. [#13] at 6 (citing TEX. CIV. PRAC. & REM. CODE §§ 16.004(a)(4)–(5), 16.051 for claims based on fraud, breach of fiduciary duty, and breach of contract). The parties do dispute when the causes of action accrued. Generally, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 675 (5th Cir. 2013) (quoting *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011)). "'In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Id.* (quoting *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). This is known as the "injury rule." *Id.*

The accrual date can be tolled through the "discovery rule," which "'operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim.'" *Id.* (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). It is a "'very limited' exception and will be applied only 'when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable.'" *Id.* (quoting *Wagner & Brown*, 58 S.W.3d at 734). Texas courts have "set the 'inherently undiscoverable' bar high, to the extent that the discovery rule will apply only where it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996)). Courts determine "whether an injury is inherently undiscoverable on a categorical basis

because such an approach brings predictability and consistency to the jurisprudence." *Wagner &*
*Brown*, 58 S.W.3d at 735 (internal quotation omitted). In other words, the question is whether the
injury is the type "that generally is discoverable by the exercise of reasonable diligence." *Id.*
(internal quotation omitted).

The accrual date can also be deferred if there is "fraudulent concealment," which "estops
defendants from raising limitations as a defense." *Priester*, 708 F.3d at 676. When a defendant
hides evidence of harm from a plaintiff, "he will not 'be permitted to avoid liability for his actions
by deceitfully concealing wrongdoing until limitations has run.'" *Id.* (quoting *S.V.*, 933 S.W.2d at
6). Fraudulent concealment tolls the statute of limitations "'until the claimant, using reasonable
diligence, discovered or should have discovered the injury.'" *Id.* (quoting *KPMG Peat Marwick v.*
*Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999)). There are four elements to
fraudulent concealment: "'(1) the existence of the underlying tort; (2) the defendant's knowledge of
the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable
reliance on the deception.'" *Id.* (quoting *Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex.
App.—El Paso 2010, pet. denied)).

Chang asserts a number of dates by which he contends CNBMI knew or should have known
of its claims. First, Chang generically indicates CNBMI's claims "arise from alleged misdeeds by
Chang dating to as far back as 2005 and accruing by no later than 2008." Chang's Mot. Dismiss [#9]
at 10. Chang, however, does not substantiate how the claims could have accrued during this time
frame. CNBMI's complaint clearly alleges it did not know and could not have known of Chang and
BNK's fraudulent activity until it obtained the records in 2010 from Lumber Liquidators and Bank

of America. *See* Compl. [#1] ¶¶ 26, 27, 30, 37, 81. Therefore, the discovery rule tolls the accrual date until at least some point in 2010.

More specifically, Chang asserts the following days as the accrual dates: (1) April 14, 2010, the date CNBMI's Requests were served on BNK seeking information for purposes of collecting on the Judgment, including BNK's bank records and statements of financial affairs; (2) July 1, 2010, the date CNBMI issued a Subpoena to Produce Documents to Lumber Liquidators; (3) July 16, 2010, the date CNBMI filed its Motion to Compel and Motion for Sanctions against BNK; (4) July 22, 2010, the deadline for Lumber Liquidators to produce documents in response to the subpoena; and (5) July 30, 2010, the date the declaration from Lumber Liquidators was signed. *See* Chang's Mot. Dismiss [#9] at 10–13.

Regarding CNBMI's Requests made April 14, 2010, Chang argues this filing evinces the fact CNBMI "was already suspicious of Chang since it requested documents through discovery related to transfers by BNK to Chang." *Id.* at 12. Chang highlights Request No. 26, which demanded: "All documents embodying, evidencing, or pertaining to any amount of money paid by BNK to Jeffrey Chang, including but not limited to any loans and/or investments, at any time from January 1, 2007 through the present." *Id.* [#9-1] Ex. 1. CNBMI's Requests reflect post-Judgment collection efforts, and as a judgment creditor, CNBMI was entitled to make a broad inquiry, including a request for documents relating to money paid by BNK to Chang, to discover any assets BNK may have concealed. *See FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) ("The scope of post-judgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made."). Request No. 26 qualifies as a broad post-judgment discovery inquiry and does not necessarily reflect CNBMI's "suspicion," much less its knowledge of Chang's wrongdoing.

-10-

Next, Chang points to July 1, 2010, the date CNBMI issued the Lumber Liquidators subpoena. Chang asserts "the fact that [CNBMI] was subpoenaing these records on July 1, 2010 and looking for this very information shows they knew or should have known of their claims." Chang's Mot. Dismiss [#9] at 11. Chang's argument goes too far. Rather than showing CNBMI knew or should have known Chang and BNK had defrauded CNBMI, the subpoena to Lumber Liquidators demonstrates CNBMI's efforts to figure out why Chang and BNK were failing to comply with discovery requests. One of CNBMI's Requests was production of BNK's bank or financial records, but in its initial responses BNK only produced: (1) a Convertible Promissory Note and Line of Credit from Crossroads Enterprise, Inc., and (2) a Royalty Agreement. In its Response, CNBMI documents the obstacles BNK created during post-judgment discovery. *See* Resp. [#13] at 8–9. In sum, BNK's continued failure to produce the bank or financial records prompted the subpoena to Lumber Liquidators. At that stage, according to its allegations, CNBMI did not know nor should it have known of its claims; it was merely seeking information for purposes of collecting on the Judgment. To the extent CNBMI's suspicion of Chang and BNK was increasing, it was a direct product of Chang and BNK's efforts to conceal the fraud from CNBMI.

Third, Chang points to July 16, 2010, the date CNBMI filed its Motion to Compel, because CNBMI "specifically pleaded to this Court . . . that 'Moreover, [CNBMI] is likewise entitled to discover whether these 'agreements' are a **sham or fraud** and/or whether BNK is concealing its assets . . . .'" Chang's Mot. Dismiss [#9] at 13 (quoting Mot. Compel & Mot. Sanctions at 8, *China Nat'l Bldg. Material Inv. Co., Ltd. v. BNK Int'l LLC*, No. A-09-CA-488-SS (W.D. Tex. July 16, 2010), ECF No. 36) (emphasis added by Chang). Based on this pleading, Chang argues CNBMI

knew as of July 16, 2010, he "might be concealing assets," and therefore knew or should have known of its claims on that date.  Mot. Dismiss [#9] at 13.

As an initial matter, the passage Chang quotes, when read in its entirety, makes clear the "agreements" referenced by CNBMI are: (1) the Convertible Promissory Note and Line of Credit from Crossroads Enterprise, Inc., and (2) the Royalty Agreement.  In other words, CNBMI was investigating whether those two agreements were a "sham or fraud," not whether BNK fraudulently misrepresented the actual sales exchanged between BNK and Lumber Liquidators.  Therefore, this statement by CNBMI does not support the conclusion CNBMI knew or should have known its claims against BNK regarding Lumber Liquidators.  In addition, to the extent Chang is arguing the statement reflects CNBMI's knowledge BNK "might be concealing assets" more generally, the argument is misplaced for two reasons.  First, whether CNBMI suspected BNK "might" be concealing assets is not the same as whether CNBMI knew or should have known BNK was concealing assets.  Second, whether CNBMI suspected BNK was concealing assets to protect against a judgment creditor's collection efforts is not equivalent to CNBMI suspecting BNK had actually lied about sales to Lumber Liquidators.

Finally, Chang asserts July 22, 2010, the day Lumber Liquidators produced documents under the subpoena, and July 30, 2010, the day Lumber Liquidators' representative, H. Franklin Marcus, signed his declaration (the Marcus Declaration) as the triggering dates for the limitations period. Chang argues the Lumber Liquidators declaration, signed on July 30, 2010, must have actually been prepared at some unidentified prior date by CNBMI's counsel, and the documents and information accompanying the declaration were actually produced to CNBMI by July 22, 2010.  *See* Chang's Mot. Dismiss [#9] at 11.  Since CNBMI, in its allegations, claims it did not know of its claims until

receipt of the Lumber Liquidators information, Chang argues CNBMI knew or should have known of its claims prior to July 30, 2010.

At the Rule 12 stage, the Court focuses on the allegations in the Complaint, and CNBMI unequivocally alleges: "Sometime after July 30, 2010, Lumber Liquidators produced documents responsive to CNBMI's subpoena . . . .  Lumber Liquidators also provided a declaration of an individual named Franklin Marcus." Compl. [#1] ¶ 24.  Chang's arguments require the Court to venture into the evidentiary record, but the Court declines to do so on a Rule 12 motion.  To the extent Chang alternatively requests the Court construe its motion as one for summary judgment, the Court again declines as limitations is an affirmative defense.  Defendants have not answered in this matter, and therefore limitations are not formally a part of this case.  Upon answering and asserting a limitations defense, Defendants will be free to file motions for summary judgment at which point the Court can consider a full evidentiary record and whether CNBMI did indeed receive the Lumber Liquidators information, which revealed Chang and BNK had underreported Lumber Liquidators sales, as early as July 22, 2010.[2]  For now, however, CNBMI's allegations indicate otherwise, and the Court limits its inquiry to those representations.

---

[2] While CNBMI indicates in its Complaint that Lumber Liquidators produced documents responsive to CNBMI's subpoena "[s]ometime after July 30, 2010," the declaration from CNBMI's counsel during these events in 2010, which is attached to CNBMI's Response, clearly states his law firm received the Lumber Liquidators documents "on or about July 22, 2010." *Compare* Compl. [#1] ¶ 24, *with* Resp. [#13-1] Ex. A (Gaynin Decl.) ¶ 4.  CNBMI's then-counsel also confirms his law firm prepared the Marcus Declaration ultimately signed by Marcus on July 30, 2010. Gaynin Decl. ¶ 5; *id.*, Ex. 3 (Marcus Decl.) at 2.  Therefore, if the Court were inclined to examine the evidence, the Court could reasonably deduce that from July 22, 2010, when CNBMI and its counsel received the Lumber Liquidator documents, and July 30, 2010, when Marcus signed the declaration, CNBMI and its counsel analyzed the Lumber Liquidator documents and prepared a declaration summarizing their content.  The Court could further consider the fact the Marcus Declaration, on its face, shows the total payments to Lumber Liquidators amounted to $29,001,278.71.  But, for reasons explained, the Court will not assess the evidence at this juncture and for now will merely note there would appear to be a serious limitations problem for CNBMI, at least as it concerns any attempt to recover the alleged $7,658,133.70 in underreported sales to Lumber Liquidators.

Because CNBMI alleges it did not receive the Lumber Liquidators documents until after July 30, 2010, and that it did not know, nor should it have known, of its claims regarding underreporting prior to receipt of those documents, then the claims, as pleaded, are not time-barred.[3]  With respect to the claims alleging the systematic denuding of BNK's assets by Chang for his personal benefit, these causes of action, according to the Complaint, came to CNBMI's attention through the Bank of America documents received in August 2010.  *See* Compl. [#1] ¶ 29–30.  As such, these claims were timely filed within four years.[4]  The remaining causes of action for exemplary damages and attorneys' fees are derivative claims and also survive Chang's limitations argument at the Rule 12 stage.  Therefore, Chang's motion to dismiss is DENIED, and BNK's motion, to the extent it adopts Chang's limitations argument, is DENIED for the same reasons.

## B.  Discharge under Bankruptcy

BNK, in its separate motion to dismiss, argues it lacks capacity to be sued as a party in this proceeding in light of its prior Chapter 7 bankruptcy liquidation.  Specifically, BNK reasons that because "a corporation may not pursue a pre-petition claim after a Chapter 7 liquidation and is further considered effectively dissolved, it therefore seems logical to assume that a defunct corporation could not be liable for prepetition claims."  BNK's Mot. Dismiss [#10] ¶ 8.  Section 11.356 of the Texas Business Organizations Code specifically provides a dissolved corporation continues in existence until three years from the date of dissolution to prosecute or defend "in the

---

[3] Count III (breach of contract), Count IV (fraud), and Count V (breach of fiduciary duty by BNK and Chang to CNBMI) relate entirely to BNK and Chang's alleged underreporting of sales to Lumber Liquidators. *See* Compl. [#1] ¶¶ 75–88.

[4] Count I ("Alter Ego/Piercing the BNK Veil"), Count II ("Sham to Perpetrate a Fraud Requiring Piercing of the BNK Veil"), and Count VI (breach of fiduciary duty by Chang to BNK) concern Chang's unity with BNK. *See* Compl. [#1] ¶¶ 62–74, 89–94.

terminated filing entity's name an action or proceeding brought by or against the terminated entity," and to permit "the survival of an existing claim by or against the terminated filing entity." TEX. BUS. ORG. CODE §§ 11.356(a)(1), (a)(2). Therefore, a lawsuit may be filed against a dissolved corporation for an existing claim if it is brought within three years of the date of dissolution of the entity. *Id.* §§ 11.351, 11.359(a).

Contrary to BNK's assertion, BNK's Chapter 7 liquidation on March 31, 2011, did not effectuate BNK's dissolution. *See In re CVA Gen. Contractors, Inc.*, 267 B.R. 773, 781 n.10 (Bankr. W.D. Tex. 2001) ("We disagree with the district court's holding in *Liberty Trust* that the liquidation of a corporation under chapter 7 accomplishes the dissolution of that corporation.") (citing 6 *Collier on Bankruptcy*, ¶ 727.01[3] (15th ed. rev. 2000) ("After liquidation, any dissolution of the corporation or partnership that the parties desire must be effectuated under state law, since the Code does not provide for dissolution of corporations or partnerships.")). Rather, BNK was dissolved on October 10, 2012, when it officially filed a dissolution with the Texas Secretary of State. Because CNBMI's claims are "existing claims" prior to BNK's dissolution, and the Complaint was filed within three years of BNK's dissolution on October 10, 2012, BNK continues to survive for purposes of this "action until all judgments, orders, and decrees have been fully executed." TEX. BUS. ORG. CODE § 11.356(c)(1).

Finally, the Court notes a bankruptcy defense is typically an affirmative defense. *See Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1062–63 (5th Cir. 1997) (recognizing that a discharge in bankruptcy is an affirmative defense). While BNK indicates it did not receive a discharge because corporations cannot by statute receive a Chapter 7 discharge, the Court still finds BNK's bankruptcy argument should be asserted as an affirmative defense and considered on an evidentiary record. The

-15-

current record is unclear as to what exactly transpired in the bankruptcy court, and BNK will be able to clarify this record if it chooses to reassert its bankruptcy argument on summary judgment.

## C.     Res Judicata

BNK also seeks Rule 12 dismissal based on res judicata, arguing CNBMI is attempting to relitigate the arbitration concluded in 2009 and subsequently confirmed by this Court in a final judgment.  Res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been litigated in an earlier lawsuit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).  The Fifth Circuit has stated "generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005); *see also Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004) (unpublished) (declining to address the issue of res judicata raised in the motion to dismiss because it is an affirmative defense that should be addressed at summary judgment or at trial); *Aubrey v. Barlin*, No. A–10–CA–076–SS, 2011 WL 675068, at *11 (W.D. Tex. Feb. 16, 2011).

Res judicata is an affirmative defense, and BNK's assertion of claim preclusion at the Rule 12 stage is premature.  To resolve the question of res judicata, the Court will need to consider an evidentiary record comparing whether the claims in the respective litigations rest on the same nucleus of operative facts. *See In re Southmark Corp.*, 163 F.3d at 934.  The Court DENIES this ground for dismissal without prejudice to re-urging res judicata on summary judgment.

### Conclusion

A Rule 12(b)(6) motion requires the Court to examine the pleadings and accept as true the plaintiff's factual allegations.  Defendants' Rule 12 motions, however, rest largely on not-yet-

pleaded affirmative defenses and disputes requiring resort to an evidentiary record. The Court rejects this attempt to litigate the entire case on the pleadings, DENIES the motions to dismiss, and does so without prejudice to Defendants renewing their arguments on motions for summary judgment.

Accordingly,

IT IS ORDERED that Defendant Jeffrey Chang's Motion to Dismiss [#9] is DENIED;

IT IS FINALLY ORDERED that Defendant BNK International, LLC's Motion to Dismiss [#10] is DENIED.

SIGNED this the 27 day of January 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE